UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **ATAHUAMAN** | **CASE NO. 6:24-CV-01448** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **GEO GROUP INC** | **MAGISTRATE JUDGE DAVID J. AYO** |

## AMENDED ORDER

This Court's Order of September 18, 2025 (Rec. Doc. 37) is hereby AMENDED as follows:

Before this Court came a MOTION TO COMPEL filed by Plaintiff Jordy Atahuaman Carhuancho (Rec. Doc. 26). Defendant GEO Group, Inc. ("GEO") filed an opposition (Rec. Doc. 29) to which Plaintiff replied (Rec. Doc. 35). As noticed in the record, the motion was heard with oral argument in open court before the undersigned on July 24, 2025. Plaintiff was represented by counsel of record, Jill Kraft and Brett Conrad. GEO was represented by counsel of record, Robert Mahtook.

Plaintiff is the brother and duly appointed curator[1] of Dulce Mercedes Atahuaman Carhuancho and brings this suit for alleged injury and resulting damages arising from Dulce's detention at the South Louisiana ICE Processing Center (SLIPC) in Basile, Louisiana in 2023. (Rec. Doc. 1-2 at ¶ 3). SLIPC is operated by GEO, a foreign corporation domiciled in Boca Raton, Florida. (Rec. Doc. 5 at ¶ 2). This case is now set for trial on September 21, 2026. (Rec. Doc. 24). Pursuant to the Court's Scheduling Order issued in this case, discovery should conclude on or before April 6, 2026. (Rec. Doc. 25).

---

[1] Plaintiff asserts that a Judgment of Interdiction appointing him as Dulce's curator was issued in the 15th Judicial District Court for the Parish of Vermilion on or about July 15, 2024. (Rec. Doc. 1-2 at ¶ 1).

Plaintiff's motion seeks an order compelling GEO to produce documents originally requested by an October 2, 2024 subpoena duces tecum issued in state court prior to GEO's removal of the case and again requested by interrogatories and requests for production propounded on GEO on or about April 29, 2025. (Rec. Doc. 26-2 at pp. 5–6, 11–15).

Plaintiff's brief identifies two interrogatories and six requests for production to which GEO's responses are insufficient and warrant the relief requested in the instant motion. (*Id.* at pp. 11–15). Specifically, Plaintiff's motion contests the applicability of the "peer review" or "self-critical analysis" privilege to documents identified in GEO's privilege log. (*Id.* at pp. 17–23). Although not entirely clear from the briefs, counsel's representations at the hearing clarify that, in addition to documents listed in this privilege log, GEO has identified other documents which it believes are responsive to Plaintiff's discovery requests but has declined to produce them without benefit of a protective order. Plaintiff asserts that, despite engaging in lengthy negotiations on a protective order in this case, the parties are now at an impasse. The Court will address both of these issues in turn.

GEO produced its privilege log to Plaintiff on January 30, 2025, identifying the following items:

- a Root Cause Analysis and Action Plan in Response to a Sentinel Event;
- a September 26, 2023 email from Helen Grimes to David Holland, David Tackett, Cindy Walters, Joel Ziegler, and Jason Mayo;
- a September 26, 2023 email from David Tackett to Jiena Deeb, John Christakis, Juan Castillo, and Bertha Villaneuva;
- five statements given by Chelsea Barnard, LPN, April Cesar, RN, Amy Pruitt, RN, Selisa Valyan, FNP-C, and C. Walters, HSA; and
- twenty-one (21) clips of security video.

(Rec. Doc. 26-7).

The privilege log asserts the "Peer Review and Self-Critical analysis" privilege as to each of these identified items. (*Id.*). GEO's most recent responses to Plaintiff's

interrogatories and requests for production continue to assert this privilege as to the items identified in its privilege log.  (Rec. Doc. 26-11).

In this suit, Plaintiff asserts tort claims under Louisiana law.  (*See*, Rec. Doc. 1-2 at ¶¶ 19–20).  As noted by GEO in its brief, Plaintiff has not stated a civil rights claim under 42 U.S.C. § 1983 and, as affirmed by Plaintiff's counsel in email correspondence and in open court, is not prepared to assert such a claim at this time.  (*See*, Rec. Doc. 29-1).  Rule 501 of the Federal Rules of Evidence provides that federal common law applies to claims of privilege in federal question cases, but state law applies to claims of privilege as to claims "for which state law provides the rule of decision."  In cases asserting both state and federal claims, as to which the respective laws of privilege conflict, "'courts have generally applied federal privilege law.'"  *Snearl v. City of Port Allen*, 2024 WL 4701885 at * 4 (M.D. La. Nov. 6, 2024) (quoting *Porter v. Dauthier*, 2014 WL 6674468 at *3 (M.D. La. Nov. 25, 2014)).  Plaintiff correctly argues that federal common law does not recognize the peer review or self-critical analysis privilege, but cases cited for that proposition are distinguishable on the basis that they featured federal claims.[2]  As this case presents only Louisiana law claims, Louisiana's law of privilege applies.

LA. STAT. ANN. § 13:3715.3(A)(2) protects from discovery, in relevant part,

> all records, notes, data, studies, analyses, exhibits, and proceedings of any hospital committees, peer review committees of any medical organization, …group medical practice of twenty or more physicians,…or healthcare provider…including but not limited to the credentials committee, the medical staff executive committee, the risk management committee, or the quality assurance committee, any committee determining a root cause analysis of a sentinel event, established by the peer review committees of a medical organization.

---

[2]   *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586 (5th Cir. 2000); *Verret v. Acadiana Criminalistics Lab. Comm'n*, 2021 WL 3666999 (W.D. La. Aug. 18, 2021); *Derise v. Chevron USA, Inc.*, 2005 WL 8178062 (W.D. La. May 12, 2005).

Informed by the Louisiana Supreme Court's decisions in *Smith v. Lincoln Gen. Hosp.*, 605 So. 2d 1347 (La. 1992), among others, the Fifth Circuit recognizes that this provision "does not provide a blanket privilege to all peer review committee documents" and does not "insulate from discovery specific facts merely because they have come under the review of any particular committee." *Frederick v. St. Charles Surgical Hosp., LLC*, 410 So. 3d 905, 908 (5th Cir. 2024).

Jurisprudence interpreting LA. STAT. ANN. § 13:3715.3 readily demonstrates that such privilege is inapplicable as to Plaintiff's tort claims of assault and battery, excessive force, and failure to protect, as these claims do not relate to the provision of medical care. Rather, they allege that either Dulce was subjected to an assault at the hands of GEO personnel; that GEO personnel failed to act reasonably to protect her from an assault at the hands of another detainee; or that GEO personnel failed to protect Dulce from self-harm. Considering GEO's opposition to discovery in this case, this Court finds Plaintiff's lack of specific knowledge as to the origin of Dulce's injuries understandable. Again, these claims do not allege medical malpractice or negligence related to medical care. GEO presents no law or jurisprudence upon which this Court might apply LA. STAT. ANN. § 13:3715.3 to such claims.

In contrast, as regards Plaintiff's claims for deliberate indifference to medical needs, and failure to render timely or adequate medical care, Louisiana's peer review privilege may shield at least a portion of any document fairly described within LA. STAT. ANN. § 13:3715.3 from production. The undersigned rejects GEO's broad view of the peer review privilege, however.

> [W]hen a plaintiff seeks information relevant to his case that is not information regarding the action taken by a committee or its exchange of honest self-critical study but merely factual accountings of otherwise discoverable facts, such information is not protected by any privilege as it does not come within the scope of information entitled to that privilege.

4

*Gauthreaux v. Frank*, 656 So. 2d 634, 634–35 (La. 1995) (quoting *Smith*, 605 So. 2d at 1348). Considering the potential for some application of the privilege to the items identified in GEO's privilege log, the Court ordered production of all evidence identified in GEO's privilege log for *in camera* inspection. GEO promptly produced those items at the hearing and all items have been carefully reviewed by the undersigned.

### 1. *Root Cause Analysis and Action Plan in Response to a Sentinel Event*

GEO claims the peer review privilege as to a report authored by David Tackett, Manager, Regional Health Services Central, entitled "Root Cause Analysis and Action Plan in Response to a Sentinel Event" ("Report") (*See*, Rec. Doc. 26-7). In support of this assertion of privilege, GEO offers unsworn declarations by Tackett and Dr. John E. Christakis, Chief Medical Officer, Correctional Health Services. (Rec. Docs. 29-4, 29-5). GEO also offers copies of the following policies: 801 and 801-A, entitled "Clinical Performance Enhancement (Peer Review)[;]" 803 and 803-A, entitled "Performance Improvement and Risk Management Program[;]" 806 and 806-A, entitled "Sentinel Events[;]" 807 and 807-A, entitled "Serious Incident Reports." (Rec. Doc. 32).

Plaintiff argues against application of the privilege because the Report was not the work of a committee. Rather, as Plaintiff points out, Tackett's declaration admits that he alone collected the information necessary for the Report and authored it himself. Plaintiff further points out that GEO's own policies require that a root cause analysis be prepared by a committee. Plaintiff is correct that Policy 806-A requires that

> whenever a sentinel event is suspected to have occurred, a [root cause analysis] RCA will be initiated. An ad hoc committee will be formed that includes the HSA, facility Medical Director, Director of Nursing/Nursing Supervisor, Regional Director for Health Services, Senior Director Mental Health and Chief Medical Officer (CMO), the Regional Health Service Director, and primary practitioner involved in the I/D/R's care, clinical staff directly involved in the I/D/R's care, and anyone else deemed appropriate.

5

*Id.* at p. 15.

After reviewing the various policies produced, this Court finds that the Report at issue is clearly one prepared pursuant to GEO's Policy 806-A regarding sentinel events. Although the other policies do concern the ongoing analysis of medical care provided by GEO, the specific Report authored by Tackett is clearly a root cause analysis as is contemplated in Policy 806-A. The undersigned notes that "sentinel event" is not defined within the policies offered by GEO, but is defined in the referenced Joint Commission Standards for Ambulatory Care: Sentinel Events as including "[r]equired consult/management or comfort care for a neurological (for example, skull fracture, subdural or intracranial hemorrhage)."[3] Accordingly, Dulce's medical event is reasonably considered a sentinel event in this case.

This Court agrees that GEO clearly did not follow its own policy in the preparation of the Report, as no evidence indicates the formation of an ad hoc committee as contemplated in Policy 806-A. The question presented is whether GEO's informal self-analysis negates the privilege that may otherwise apply under LA. STAT. ANN. § 13:3715.3. Neither party cites authority addressing this issue. After review of the operative statute, this Court finds that, though not in conformity with its own policies, the Report authored by Tackett is protected from disclosure under Louisiana's peer review privilege, as it was authored by "a member of the peer review committee" and is not "otherwise discoverable." LA. STAT. ANN. § 13:3715.3(A)(2). The Report contains no otherwise discoverable facts or raw data, which can be excerpted. Rather, it contains a series of conclusions as to the cause of Dulce's medical event on September 25, 2023 and determines steps GEO should take in light of those conclusions to improve future patient care. After careful *in camera* review of this evidence and for the reasons detailed above, Plaintiff's Motion to Compel will be denied as to GEO's

---

[3] www.jointcommission.org/-/media/tjc/documents/resources/patient-safety-topics/sentinel-event/2025/se-9-camambulatorycare_se_jan_2025.pdf

Root Cause Analysis and Action Plan in Response to a Sentinel Event. This document falls within Louisiana's peer review privilege under LA. STAT. ANN. § 13:3715.3, making it exempt from production under the general rules of discovery.

2. *Statements of GEO employees*

GEO's privilege log asserts the peer review privilege as to five statements of GEO employees: Nurse Chelsea Barnard, Nurse April Cesar, Nurse Amy Pruitt, Nurse Practitioner Selisa Valyan, and an employee identified as "C. Waters, HSA." These narrative statements offer the sort of raw data that is clearly not within the peer review privilege. These statements offer no after-action review. Rather, they recount the observed details of Dulce's onset of symptoms, arrival, assessment and treatment at SLIPC's infirmary, her transport to outside medical facilities, and updates on her condition relayed between those facilities and SLIPC medical staff. The subject statements are the sort of evidence that, while generally collected for peer review committee consideration, are not transformed from otherwise discoverable facts into privileged information merely because a committee might review them. *Gauthreaux v. Frank*, 656 So. 2d 634 (La. 1995); *Smith v. Lincoln Gen. Hosp.*, 605 So. 2d 1347 (La. 1992). After careful *in camera* review and for the reasons expressed above, the undersigned will grant Plaintiff's Motion to Compel as to the five written statements of GEO employees listed in GEO's privilege log.

3. *Emails between GEO employees*

GEO's privilege log further asserts the peer review privilege as to two emails exchanged by GEO employees: a September 26, 2023 email from Helen Grimes to David B. Holland, an employee of Immigration and Customs Enforcement ("ICE"), and a September 26, 2023 email from David Tackett to GEO employees Jiena Deeb, Dr. John Christakis, Juan Castillo, and Bertha Villanueava. Like the employee statements referenced above, these emails provide no deliberative process or opinion as to cause. Rather, they recount a timeline

7

of events and the responses of Dulce's fellow detainees when asked about her condition prior to the onset of her symptoms. The undersigned does not find indicia within these emails that they were part of a committee's deliberative process or that they were specifically prepared as part of any committee work. After careful *in camera* review and for the reasons expressed above, this Court will grant Plaintiff's Motion to Compel with respect to the two employee emails listed in GEO's privilege log.

### 4. Security Video Clips

GEO's privilege log also asserts the peer review privilege as to twenty-one (21) video clips captured by the SLIPC security cameras. This Court has carefully reviewed the video evidence at issue and finds that it contains raw data depicting inmates on their way to and standing in line for a meal in the dining hall. These videos also capture the onset of Dulce's symptoms, her transport to the infirmary and her eventual transport from SLIPC by emergency medical personnel. These videos contain no commentary, evaluation, or analysis by any committee or personnel, such as would place them within the ambit of the peer review privilege. As explained above, the fact that these video clips may have been reviewed by SLIPC personnel as part of its peer review process is not a basis for withholding this evidence under the guise of privilege. For this reason, this Court will further grant Plaintiff's Motion to Compel as to the twenty-one (21) security video clips listed in GEO's privilege log.

Regarding GEO's production of the evidence as to which Plaintiff's Motion to Compel will be granted and such evidence currently being withheld by GEO on the basis that it should first be subject to a protective order, this Court agrees that the evidence in this case is likely to contain sensitive information, and good cause exists to protect the private information pertaining to Plaintiff's medical records, as well as to any commercially or operationally sensitive information regarding SLIPC. *June Med. Servs., LLC v. Phillips*, 22 F.4th 512, 520–21 (5th Cir. 2022) (protective orders may be entered by a court only upon a finding of

8

good cause). The parties have filed drafts and corresponding briefs addressing preferred language for a protective order in this case. This Court has reviewed those filings and will also issue this day an Order in response to the parties' competing drafts, such that a protective order may be issued.

For the reasons expressed herein and on the record at the hearing of this motion, it is hereby

ORDERED that Plaintiff's MOTION TO COMPEL is GRANTED in part, such that GEO will produce to Plaintiff the written statements of GEO employees Chelsea Barnard, April Cesar, Amy Pruitt, Selisa Valyan, and C. Waters within FIVE (5) days of the issuance of a protective order in this case. It is further

ORDERED that Plaintiff's MOTION TO COMPEL is GRANTED in part, such that GEO will produce to Plaintiff the September 26, 2023 email of GEO employee Helen Grimes to ICE employee David B. Holland and the September 25, 2023 email of GEO employee David Tackett to GEO employees Jiena Deeb, Dr. John Christakis, Juan Castillo, and Bertha Villaneuava within FIVE (5) DAYS of the issuance of a protective order in this case. It is further

ORDERED that Plaintiff's Motion to Compel is GRANTED in part, such that GEO will produce to Plaintiff all twenty-one (21) security video clips identified in GEO's privilege log within FIVE (5) DAYS of the issuance of a protective order in this case. It is further

ORDERED that Plaintiff's MOTION TO COMPEL is DENIED in part, such that GEO is entitled to withhold production of its document entitled Root Cause Analysis and Action Plan in Response to a Sentinel Event as such evidence falls within the peer review privilege under LA. STAT. ANN. § 13:3715.3. It is further

ORDERED that GEO will produce all additional responses to discovery currently withheld on the basis of the need for a protective order within FIVE (5) DAYS of the issuance of a protective order in this case. It is also

ORDERED that Plaintiff's MOTION TO COMPEL is DENIED as to incidental relief. Considering the foregoing, it is finally

ORDERED that GEO's recent Motion for Status Conference (Rec. Doc. 40) is DENIED as MOOT.

SO ORDERED this 30th day of December, 2025, at Lafayette, Louisiana.

_____
**DAVID J. AYO**
**UNITED STATES MAGISTRATE JUDGE**